IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIC A. VICONSI, SR., et al, | ) | CASE NO. 1:02CV382 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge John M. Manos |
| | ) | |
| LEHMAN BROTHERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OF OPINION |

On November 15, 2005, Lehman Brothers, Inc. and Lehman Brothers Holdings, Inc. (collectively "Defendants" or "Lehman") filed a Motion To Vacate the Arbitrators' Award (Docket No. 154). The parties have fully briefed the issues.

For the following reasons, the motion is DENIED.

I. FACTS

This action is one of many arising out of investment fraud committed by broker Frank Gruttadauria, a former employee of the Defendants. Pursuant to the Sixth Circuit's decision in Fazio v. Lehman Brothers, Inc., 340 F.3d 386 (6th Cir. 2003), on October 21, 2003, this Court compelled arbitration in this action.

In the Statement of Claim submitted for the arbitration, and consistent with their

allegations made before this Court, the Plaintiffs sought a total of $37.5 million in compensatory damages, and additional amounts for punitive damages, fees and expenses, and interest. The demand for compensatory damages is based upon account values contained in Lehman account statements received from Gruttadauria just before he disappeared.

During the pendency of the arbitration, the Plaintiffs settled their claims against SG Cowen Securities Corp. and its affiliates.[1] Following a hearing, on September 21, 2005, the panel awarded the Plaintiffs against Lehman approximately $10.4 million in compensatory damages plus post-award interest at 9%. The panel denied other relief, including punitive damages and attorneys fees. On November 15, 2005, the Lehman Defendants filed the current motion on the ground that the award stems from a manifest disregard of the law.

## II. LAW

There is a presumption that an arbitration award will be confirmed. Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 328 (6th Cir. 1998). Courts have only a limited role in reviewing arbitration decisions. A decision may be vacated if the arbitrators "manifestly disregarded the law". Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir.), cert. denied, 531 U.S. 878 (2000); Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 136 (6th Cir. 1996); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995).[2]

To find manifest disregard of the law, the arbitration decision "must fly in the face of

---

[1] For confidentiality purposes, the precise amount of the SG Cowen settlement is not disclosed in this opinion.

[2] In addition to manifest disregard of the law, 9 U.S.C. § 10(a) contains four grounds for vacating arbitration awards based on various categories of arbitrator misconduct, or for exceeding the authority granted under the arbitration agreement. In this case, the Plaintiffs rely solely on manifest disregard of the law.

-2-

established precedent". Dawahare, 210 F.3d at 669; Glennon, 83 F.3d at 136; Jaros, 70 F.3d at 421. Manifest disregard is shown if: (1) the applicable legal principle is clearly defined and not subject to reasonable debate, and (2) the arbitrators refused to heed the legal principle. Dawahare, 210 F.3d at 669; Jaros, 70 F.3d at 421. Errors of fact or misinterpretation of the law are not sufficient to meet this standard. Andersons, 166 F.3d at 328; Glennon, 83 F.3d at 136; Jaros, 70 F.3d at 421.

### III. ANALYSIS

A. Errors of Fact or Law

The Defendants argue that the arbitrators misapplied the law of damages. They assert that Lehman was erroneously held jointly and severally liable with SG Cowen. Even if so, such an argument does not demonstrate "manifest disregard". As the cases in the previous paragraph show, review is limited to *refusals* to apply applicable legal principles, not *errors*. Errors of fact or misinterpretation of the law do not constitute manifest disregard.

The record does not reflect any indication that the arbitrators refused to apply settled law. To the contrary, they explicitly invited briefs and oral arguments on the issue of joint and several liability. One important consideration is whether the applicable law was explained during the arbitration because manifest disregard requires awareness of applicable legal principles. Dawahare, 210 F.3d at 670, citing, Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 204 (2d Cir. 1998), cert. denied, 526 U.S. 1034 (1999). The law of joint and several liability was presented fully.

Another consideration is whether the prevailing party urged the arbitrators to ignore applicable law. Dawahare, 210 F.3d at 670, citing, Montes v. Shearson Lehman Brothers, Inc.,

128 F.3d 1456, 1458-59 (11th Cir. 1997).  This factor weighs against the Defendants.  <u>Montes</u> is illustrative of this principle.  There, the parties submitted an overtime pay dispute, arising under the federal Fair Labor Standards Act, to arbitration.  The attorney for the prevailing party argued incorrectly that "you as an arbitrator are not guided strictly to follow case law precedent".  He urged them to disregard the statute and do "what's fair and just and equitable" because "in this case this law is not right".  The arbitrators followed this blatant request to ignore the law, which the court determined constituted manifest disregard.  <u>Montes</u>, 128 F.3d at 1459-61.

No such conduct occurred here.   At most, the Defendants assert that the Plaintiffs' counsel "fraudulently" urged the arbitrators to adopt a recklessness standard to determine whether Lehman acted in concert with SG Cowen, one potential basis for joint and several liability. Upon review of the record and the case law, the Court concludes that the Plaintiffs' counsel did not commit fraud.  Their arguments were well within reasonable standards of lawyer advocacy.  The record shows that the arbitrators afforded the Defendants a full and fair opportunity to present their own position.  Accordingly, the Defendants cannot demonstrate manifest disregard.

    B.  <u>The Merits of Joint and Several Liability</u>

The Plaintiffs argue that there is sufficient support in the record and case law to support a conclusion that Lehman is jointly and severally liable for Gruttadauria's entire scheme.  The Court agrees.  Accordingly, the arbitrators did not manifestly disregard the law for this reason as well.

Joint and several liability occurs when tortfeasors act in concert or contribute concurrently to the same wrong.  Alternatively, joint and several liability applies as to injuries

that are incapable of any reasonable or practicable division or allocation among multiple tortfeasors. Ravo by Ravo v. Rogatnick, 70 N.Y.2d 305, 309-10 (1987); Robebuck v. Duprey, 710 N.Y.S.2d 451, 452 (N.Y. App. 2000).

At the outset, the parties, particularly the Defendants, focus on whether Lehman acted in concert with SG Cowen. Such an analysis is too narrow. Joint and several liability is defined with respect to joint *tortfeasors*, not *parties*. Therefore, this issue must also be analyzed considering whether there was concerted action with Gruttadauria himself, even though he was not named as a party (presumably because he no longer has substantial assets to contribute to any judgment). A claimant may choose which joint tortfeasors to name as defendants in an action regardless of the concurrent conduct of others. Ravo, 70 N.Y.2d at 313. Based upon Gruttadauria's guilty plea during the related criminal proceedings, there can be no dispute that Gruttadauria is a joint tortfeasor. Accordingly, Lehman's relationship to Gruttadauria is relevant as to whether there is joint and several liability.

The parties dispute the definition of "concerted action". The Defendants rely on the following definition of "concerted action". "Concerted action" requires (1) evidence of some agreement, express or tacit, of a "common plan" to engage in tortious conduct, (2) tortious conduct by each party, and (3) the tortious conduct by at least one of the parties was in furtherance of the agreement. Pittman by Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998), cert. denied, 528 U.S. 818 (1999); Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 295 (1992); In re Brooklyn Nay Yard Asbestos Litigation, 971 F.2d 831, 841 (2d Cir. 1992). However, as the Plaintiffs assert, at least some cases applying New York law, as well as Section 876 of the Restatement (Second) of Torts, recognize that concerted action also can exist through

-5-

"substantial assistance or encouragement", without rising to the level of a "common plan". See Fletcher v. Atex, Inc., 68 F.3d 1451, 1465 (2d Cir. 1995) (recognizing ambiguities of New York law), citing, Bichler v. Eli Lilly & Co., 55 N.Y.2d 571, 580-81 (1982). One requirement of substantial assistance is that the subsequent tortfeasor "knows" that the other's conduct constitutes a breach of duty. Fletcher, 68 F.3d at 1465. Thus, both definitions advocated by the parties have precedential support, so the arbitrators could agree with either party without manifestly disregarding the law.

The parties also dispute whether recklessness or some other lack of actual knowledge is sufficient to establish either a tacit agreement or the requisite knowledge for substantial assistance. In the cases cited by the Plaintiffs, in the conspiracy context a tacit agreement has been found by some courts under the "conscious avoidance doctrine". Under this doctrine, in the absence of actual knowledge, knowledge may be deemed when a party consciously avoided learning of a fact while aware of a high probability of its existence. United States v. Svoboda, 347 F.3d 471, 477-78 (2d Cir. 2003), cert. denied, 541 U.S. 1044 (2004).

Furthermore, in the context of securities fraud, the concept of "joint tortfeasors" has been delineated to include independent tortfeasors who concurrently cause the same harm. In re Leslie Fay Companies, Inc. Securities Litigation, 918 F. Supp. 749, 758-59 (S.D.N.Y. 1996). In particular, "red flags" of misconduct coupled with a failure to investigate create a justiciable issue as to whether two independent actors are deemed joint tortfeasors. Leslie Fay, 918 F. Supp. at 759 (stating recklessness is sufficient to find joint participation in securities fraud). Alleged ignorance of such "red flags" may support an inference of fraudulent intent. In re Health Management, Inc. Securities Litigation, 970 F. Supp. 192, 203 (E.D.N.Y. 1997). See also

-6-

<u>In re Investors Funding Corp. Of New York Securities Lititgation</u>, 523 F. Supp. 550, 558 (S.D.N.Y 1980) (recklessness can provide scienter in securities fraud cases when a fiduciary relationship exists with the defrauded party).  Accordingly, the Plaintiffs' position as to requisite mental state likewise can be supported in the case law.

The Plaintiff cites to evidence of hefty payments to Gruttadauria coupled with various "red flags" of misconduct.  The Court's role here is not to analyze this evidence anew, but only to determine whether there exists support in the record and case law to support the decision of the arbitrators.   Under this deferential standard, a conclusion is supportable that Lehman is jointly and severally liable for the entire scheme based on concerted action with Gruttadauria.  Accordingly, the arbitrators did not manifestly disregard the law.

C. <u>Alternative Damages Theories</u>

The Defendants' arguments are limited to the issue of joint and several liability.  The Court, however, concludes that the arbitrators' Award can be justified without reliance on joint and several liability.  Accordingly, the arbitrators did not manifestly disregard the law for this reason as well.

First, there is no statement in the Award decision to the effect that principles of joint and several liability were applied vis a vis Lehman and SG Cowen. The Award merely states that "Lehman Brothers Inc., and Lehman Brothers Holdings, Inc., are jointly and severally liable for" compensatory damages totaling approximately $10.4 million.  By its plain terms, this statement means merely that joint and several liability applies to the two Lehman entities vis a vis *each other*.  There is no mention of any joint and several liability with SG Cowen (or Gruttadauria).  The only reasonable conclusion is that the damages were calculated based upon Lehman's own

conduct independent of the others involved.

The arbitrators' award contains no reasoning. This fact, however, actually weighs against the Defendants' case. Absent a contractual requirement in the arbitration agreement, arbitrators have no obligation to provide reasons for a decision. <u>Dawahare v. Spencer</u>, 210 F.3d 666, 669 (6th Cir.), <u>cert. denied</u>, 531 U.S. 878 (2000); <u>Green v. Ameritech Corp.</u>, 200 F.3d 967, 973 (6th Cir. 2000.) There is no contractual requirement for a detailed decision here, so there is nothing improper about the brevity of the decision. When arbitrators have not explained their decision, a party seeking to have an award set aside faces a "tremendous obstacle":

> If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.

<u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros</u>, 70 F.3d 418, 421 (6th Cir. 1995).

Both before this Court and again at the arbitration, the Plaintiffs maintained that Lehman is liable for the entire amounts indicated in the falsified Lehman statements, which is the basis for the asserted claim of $37.5 million. The Plaintiffs argue that they are entitled to the statement amounts under principles of express contract, implied contract, and quasi-contractual doctrines like promissory estoppel. The Plaintiffs argue that the statements constitute enforceable promises establishing the value of their assets, upon which they justifiably relied to their detriment in handling their financial affairs, planning, and lifestyle. Again, it is not the role of this Court to analyze independently these damages theories, but only to determine whether the amount awarded constitutes manifest disregard of the law.

The award against Lehman represents just over a quarter of the entire claim. This arguably represents the arbitrators' assessment of Lehman's relative fault, or a measure of the

Plaintiffs' justifiable reliance on the Lehman statements. Even adding the SG Cowen settlement, the Plaintiffs' total recovery constitutes a substantial discount from their total claim. The Court concludes, therefore, that under the applicable deferential standard, the award against Lehman constitutes a rational measure of its direct liability, independent of principles of joint and several liability. Accordingly, the arbitrators did not manifestly disregard the law.

## IV. CONCLUSION

For the foregoing reasons, Defendants Lehman Brothers, Inc.'s and Lehman Brothers Holdings, Inc.'s Motion To Vacate the Arbitrators' Award (Docket No. 154) is DENIED. Accordingly, this action is hereby dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.


Issued: February 7, 2006            s/ John M. Manos
                                    UNITED STATES DISTRICT JUDGE